(47 South. 690.)

No. 17,108.

WELLS v. JOHNSON.

(Nov. 4, 1908. On Rehearing, Dec. 14, 1908.)

DIVORCE (§ 37*)—SEPARATION FROM BED AND BOARD—PUBLIC DEFAMATION.

A wife abandoned her husband's home, taking her two children, giving the reason that her husband objected to some of her friends, and that she had to go to her mother's to receive them. The husband appealed in vain for her to return. Subsequently, accompanied by her mother and with a whip concealed about her person, she waited in the street near her husband's house and without provocation slashed him twice, and followed him up with abusive language. She also wrote to his employer, untruthfully complaining that he had not been supporting her and the children. *Held*, that the husband was entitled to a separation from bed and board.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 107; Dec. Dig. § 37.*]

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Separation action by J. Richard Wells against Gertrude O. Johnson. Judgment for defendant, and plaintiff appeals. Judgment set aside, decree of separation awarded plaintiff, and on application for rehearing cause remanded, with instructions to determine to which party custody of children should be given.

Frank McGloin, for appellant. Edward Rightor, for appellee.

PROVOSTY, J. Plaintiff sues his wife for a separation from bed and board on the ground of excesses, cruel treatment, and outrages such as render their living together insupportable, and on the ground of public defamation, and, by supplemental petition, he adds adultery to the grounds of his suit. The suit is also for the custody of the children born of the marriage.

The parties were married in June, 1899. There are two children born of the marriage, a boy and a girl. At the filing of the suit, the boy was five years and eleven months old, and the girl three years and four months.

The first disturbance of the serenity of the home seems to have been in October, 1905, when plaintiff discovered that his wife was corresponding with a Mr. Robert Patterson, whom she had met while spending the preceding summer at Hayslope farm, Russelville, Tenn., and also during the summer of 1904 at the same place. In some manner, not explained, two letters written to defendant by Patterson and some postal cards sent her by him came into the possession of plaintiff. This correspondence showed that the parties had been on a footing such as could not but be highly displeasing to any husband; in fact, of a character to give rise to grave suspicion. At that time the defendant would seem to have made some confession, for she wrote to Mr. Patterson the following letter, and gave it to plaintiff for mailing:

"When I wrote you the other day, I must have been insane. It is of vital importance to me that you return my letter at once, and never address me again."

The effect of all this upon the plaintiff is not described by any witness, and has to be inferred from the fact that defendant had recourse to an aunt of plaintiff to use her influence to prevent plaintiff from "breaking up

the home," and also had recourse to the intervention of her clergyman.

The clergyman, or the repentance of the wife, or both, seems to have pacified the husband; for the home was not at that time broken up.

But in May, 1906, a month before the filing of this suit, defendant abandoned her husband's house, and went to live at her mother's, taking the two children with her. What impelled her to this desertion is not explained, except that to plaintiff's aunt, whom plaintiff had sent to try to persuade her to return, she said that:

"Mr. Wells objected to some of the friends she received at home, and that she was obliged to go to her mother's to receive them, and that she thought where she received her friends was the better place for her."

Plaintiff made in vain a personal appeal to her to return.

A few days before the bringing of this suit the defendant, accompanied by her mother, and having a whip concealed about her person, waited in the street near plaintiff's home for his coming, and, without any provocation, slashed him twice and followed him up with abusive language as he retired from the scene and was boarding a street car. Shortly before this, she had written him a letter well calculated to irritate him; and had called upon his immediate superior in his line of employment, and lodged against him the unfounded and unwarranted complaint that he "had not been supporting her and the children."

Plaintiff's conduct throughout seems to have been irreproachable. He has of his own motion during the pendency of this suit sent to defendant each month one-half of his salary.

Under the foregoing circumstances, a husband, is, we think, entitled to a separation from bed and board. Cass v. Cass, 34 La. Ann. 614; Bienvenu v. Her Husband, 14 La. Ann. 386; 1 Fuzier-Herman, Code Annote,

p. 348, No. 119; Harrison v. Harrison, 115 La. 823, 40 South. 232.

The conduct of defendant at Hayslope farm, especially when taken in connection with the subsequent correspondence, furnishes ground for suspicion; but does not warrant the grave accusation of adultery. It is most regrettable, we think, that this charge should have been made.

It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiff have judgment decreeing a separation from bed and board between him and defendant, and according to him the permanent and exclusive care, custody, and control of Wylie Wells and Helen Mar Wells, the issue of his marriage with defendant, and condemning the defendant to pay the costs of this suit.

### On Rehearing.

PER CURIAM. The judgment heretofore handed down in this case is set aside in so far as it gives the custody and control of the children to the plaintiff; and in that connection it is now ordered, adjudged, and decreed that this case be remanded with instructions to the lower court to determine, after hearing evidence and upon the advice of a family meeting, to which one of the parties to this suit the custody of the children should be given, and to enter judgment accordingly.

Except in so far as herein modified the judgment heretofore handed down remains unchanged, and a rehearing is refused.