O’NIELL, Chief Justice
 

 (dissenting).
 

 The Prudential Insurance Company of America obtained a judgment against a corporation named Alexandrine Courts, Inc., for $482,000, plus interest and attorneys’ fees, all 'secured by first mortgages on real estate belonging to the corporation. The sheriff seized the mortgaged property and advertised it for sale, for cash, in execution of the judgment. At the sale the property was adjudicated to the seizing creditor, the Prudential Insurance Company of America, for $235,000, being two-thirds of its appraised value. There being no pri- or mortgage or lien on the property, the $235,000, less the court costs, of course, was retained by the purchaser in part satisfaction of its mortgages, which were recognized in the judgment. The insurance company and the sheriff could not agree upon the method of computing the sheriff’s fee or commission “on the price of the adjudication”. According to the statute on the subject, a sheriff’s commission for making a sale is two per cent on the first $500, and one per cent on any excess, of the price of the adjudication, provided that when the price of the adjudication includes a mortgage or mortgages against the prop
 
 *397
 
 erty sold by the sheriff, which are assumed by the purchaser, or when the purchaser retains in his hands the amount necessary to pay such mortgage or mortgages, the commission on that part of the price of the adjudication so assumed or retained by the purchaser — and not paid to the sheriff— shall be one per cent on the first $1,000, one-half of one per cent on the next $4,000, one-fourth of one per cent on the next $8,-000, and one-eighth of one per cent on the balance.
 

 The insurance company contended that, inasmuch as the price of the adjudication, $235,000, was rightfully retained in its hands -to satisfy — as far as it would satisfy — the judgment secured by its mortgages on the property — and as no part of the price except the costs of court was paid or payable to the sheriff — his commission should be one per cent (or $10) on the first $1,000, plus one-half of one per cent (or $20) on the next $4,000, plus one-fourth of one per cent (or $20) on the next $8,000, plus one-eighth of one per cent (or $277.50) on the remaining $222,000, — making a total commission of $327.50. The sheriff contended that the commission should be computed the same as if the property had been adjudicated to a third party for cash, — and as if the adjudicatee had paid the price of the adjudication, $235,000, to the sheriff in cash, — and as if he in turn had paid the money over to the Prudential Insurance Company of America. Hence the sheriff claimed as his commission two per cent (or $10) on the first $500, and one per cent (or $2,345) on the remaining $234,500, — making a total commission of $2,355. The judge of the district court decided that the commission should be $2,355, and the Prudential Insurance Company of America is appealing from the decision.
 

 The statute on the subject is Section 1 of Act 203 of 1898, as amended by Act 167 of 1928; which fixes the fees or compensation allowed to the sheriffs throughout the state (except in New Orleans) for their services in civil matters. The pertinent part of the section is the paragraph in which, after the statement that the sheriff’s fee shall be $1 for levying a seizure, is added the commission for selling the property seized. Before it was amended this paragraph was as follows: “And two per cent on the first Five Hundred Dollars, and one per cent on any excess of said amount collected and paid over to the party causing the execution or order of seizure and sale to issue or to the party adjudged to be entitled thereto in case of contest over the proceeds.”
 

 As amended by the act of 1928 the paragraph is as follows: “And two per cent on the first five hundred dollars, and one per cent on any excess of said amount, on the price of adjudication-of property sold, under actual levy or seizure of property under execution or- order of seizure and sale, provided that when the price of the adjudication includes a mortgage or mortgages against the property sold which are assumed by the purchaser,
 
 or when the purchaser retains in his hands the amount necessary to pay such mortgage or mortgages,
 
 
 *398
 
 the fees or commission on that part of the price of the adjudication so assumed
 
 or retained, by the purchaser and not paid to the Sheriff by him,
 
 shall be one (1) per cent of the first One Thousand Dollars ($1,000), one-half of one percent on the next Four Thousand Dollars ($4,000), one fourth of one per cent on the next Eight Thousand Dollars ($8,000), and one eighth of one per cent on the balance.” [The italics are by me.]
 

 Before the statute was amended the sheriff’s commission was computed only on the “amount collected and paid over” by him. If the purchaser assumed a mortgage on the property, or retained the price of the adjudication — or any portion thereof — to satisfy a mortgage on the property, the sheriff received no commission on the amount so retained by the purchaser. It was so decided by the Court of Appeal for the First Circuit, in the case of Investors’ Mortgage Co. v. Theriot, 7 La.App. 397, in January 1928, and again in Investors’ Mortgage Co. v. Prejean, 8 La.App. 46, in February 1928. One of the attorneys for the plaintiff in the latter case was the State Senator who introduced in the session of the Legislature which convened in May of that year the Senate Bill No. 195, which became Act 167 of 1928, by which Section 1 of the act of 1898 was amended. There is no doubt, therefore, that the two cases of the Investors’ Mortgage Company are what brought about the amendment of the statute, so as to allow the sheriffs a commission — not as large as the commission allowed on money received by him in cash as the price or as a part of the price of an adjudication — but nevertheless a commission — on any amount retained by the purchaser to satisfy — in whole or in part — a mortgage on the property sold by the sheriff. The. amendment did not change the rate of the commission allowed on the “amount collected and paid over” by the sheriff to the seizing creditor. The rate on that amount remains the same as it was in the act of 1898; that is, “two per cent on the first five hundred dollars, and one per cent on any excess of said amount”. All that the amendment of the statute does is to allow the sheriffs an additional compensation, in the form of a lower rate of commission on any part of the “price of the adjudication” that is not paid or payable in cash to the sheriff but is retained by the purchaser to satisfy a mortgage on the property.
 

 I consider it a mistake to construe the amendment of the statute so as to allow the higher rate of commission on all of the price of the adjudication except such amount as may be retained by the purchaser to satisfy a
 
 prior
 
 mortgage, or
 
 ranking
 
 mortgage. The amendment does not limit the lower rate of commission to the amount retained by the purchaser to pay or satisfy
 
 prior
 
 mortgages, or'
 
 ranking
 
 mortgages. Nothing is said about
 
 prior
 
 mortgages, or
 
 ranking
 
 mortgages. By the amendment it is declared that the lower rate of commission shall apply when the price of the adjudication includes
 
 a mort
 
 
 *399
 

 gage or mortgages
 
 on the property, assumed by the purchaser, or when the purchaser retains in his hands the amount necessary to pay such mortgage or mortgages. In any such case the lower rate of commission is allowed on that part of the price of the adjudication so assumed
 
 or retained by the purchaser and not paid to the sheriff by him.
 
 It seems to me-that, if the lower rate of commission is not applicable to an amount retained by a purchaser in satisfaction — or part satisfaction —of his own mortgage, — as in this case,— there is unnecessary repetition in the provisions describing the instances in which the lower rate of commission shall be applied. In the phrase “or when the purchaser retains in his hands the amount necessary to pay such mortgage or mort•gages”, the word “pay” should be construed as meaning “satisfy”, or “extinguish”, in a case where the purchaser retains an amount necessary to pay his own mortgage. The phrase “the amount necessary to pay such mortgage or mortgages” is merely the measure of the amount on which the lower rate of commission is applicable, because that amount is not paid or payable to the sheriff, but is retained by the purchaser. The quoted phrase does not mean that the amount retained by the purchaser must be actually paid by him to a third party — and not retained in payment or part payment of a mortgage due to the purchaser himself — in order that the lower rate of commission shall be applicable. There is no reason why the phrase should have such a narrow construction, — or why such a distinction should be made between a purchaser who retains an amount to pay a mortgage held by a third party, and a purchaser who retains an amount to pay or satisfy — in whole or part — a mortgage held by him. Of course, if the letter of the law did not admit of any other construction, we w°uld be obliged to so construe it, no matter how unreasonable the consequence might be; but it is not violative of the letter of this law to say thaf the word “pay” means “satisfy”, or “extinguish”, when the payment is to be made to 'one’s self — so to' speak.
 

 I consider it a mistake to say that the construction which I give to this statute would defeat its purpose, — or to say that under this construction a purchaser at a sheriff's sale could pay the price direct to the seizing creditor, with the latter’s consent, and thereby deprive the sheriff of the larger rate of commission allowed by the statute on such amount as the sheriff has the right to receive in cash and to pay over to the seizing creditor. The sheriff can protect himself from any such unfairness to him, by refusing to sign or deliver the deed until the price of the adjudication is paid, in a case where the purchaser has no right to retain the price or any part of the price of the adjudication.
 

 The Attorney General’s office — of so-called Department of Justice — rendered and published an opinion on this exact question, on the written request and for the official guidance of the Sheriff of Lincoln
 
 *400
 
 Parish, on July IS, 1936. See Report & Opinions of the Attorney General, 1936-1938,- p. 899. The question propounded by the Sheriff of Lincoln Perish was precisely the same question that is presented in this case; and the answer was exactly contrary to the prevailing opinion in this case. That is admitted frankly in the written opinion rendered by the judge of the district court in this case. The opinions of the Attorney General, of course, do not control the courts, even on questions of such general importance as we have in this case. But when an opinion rendered by the Attorney General is a reasonable interpretation of a statute affecting one of the public officials in each and every country parish in the state, — and when the opinion has been officially published and presumably acquiesced in for six years, — it is entitled to great weight. I assume that the opinion of the Attorney General in this instance has been acquiesced in, not only by the sheriffs throughout the state, but also by the Legislature, — especially in view of the fact that the Attorney General is in close touch with the Legislature, being — by Section 31 of Article 3 of the Constitution— one of the three members of the Legislative 'Bureau. I respectfully submit therefore that the opinion rendered and published by the department of justice on this question should prevail as long as the -Legislature does not see fit to make another amendment of the law. My own interpretation of the statute — independent of the opinion emanating from the office of the Attorney. General — is that the judgment appealed from should be reversed.